ROBIN GROSS  (SBN 200701)
Law Office of Robin Gross
1388 Haight Street, Suite #130
San Francisco, CA  94117
(415) 857-0231
Robin@ImagineLaw.com
Attorney for Plaintiffs:
*Susan Galanto and CCCages LLC*

Andrew Jurgensen (P81123)
John Di Giacomo
Revision Legal, PLLC
444 Cass St., Ste. D
Traverse City, MI 49684
Telephone: (231) 714-0100
Email: drew@revisionlegal.com
john@revisionlegal.com
*Counsel for Defendants, appearing pro hac vice*

John M. Begakis, Esq. (SBN 278681)
ALTVIEW LAW GROUP, LLP
12100 Wilshire Blvd., Suite 800
Los Angeles, California 90025
Telephone: (310) 230-5580
Email: john@altviewlawgroup.com
*Counsel for Defendants, local counsel*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| SUSAN GALANTO & CCCAGES LLC<br><br>Plaintiffs,<br><br>v.<br><br>TERESA MURPHY & CAGETOPIA LLC<br><br>Defendants. | Case No.  **3:23-cv-03809-MMC**<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>**Hon. Maxine M. Chesney**<br><br>**Initial Case Management Conference:**<br>**3 November 2023  --  10:30 a.m.** |

Pursuant to the Standing Order for All Judges of the Northern District of California, this Court's 1 August 2023 Initial Case Management Conference Order, Federal Rules of Civil Procedure 26 and 16, Civil L.R. 16-9, and ADR L.R. 3, the parties have met and conferred on 12 October 2023 and hereby respectfully submit this Joint Case Management Statement in advance of the Initial Case Management Conference scheduled for 3 November 2023 at 10:30am.

## I.   JURISDICTION AND SERVICE

### A. Plaintiffs' View:

This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 1338(a) because it arises under the US Copyright Act and involves federal questions of cybersquatting and unfair competition.  This Court also has jurisdiction under 28 U.S.C. § 1332 since the parties hereto are citizens of different states and the amount in controversy exceeds $75,000.  This Court has supplementary jurisdiction over Plaintiffs' pendant state law claims pursuant to 28 U.S.C. § 1367 in that the state law claims are integrally interrelated to Plaintiffs' state law claims with the federal claims and arise from a common nucleus of operative facts such that the administration of Plaintiff's state law claims with the federal claims furthers the interest of judicial economy.  All Defendants have been served and filed motions in response to the Complaint without contesting this Court's personal jurisdiction.   Plaintiffs contend that Defendant Cagetopia LLC is headquartered in Sunnyvale, California and Defendant Teresa Murphy resides in Sunnyvale, California.  Plaintiffs contend that all Defendants conduct substantial business in California.  Thus Plaintiffs contend that this Court has personal jurisdiction over Defendants.

### B. Defendants' View:

This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 where Plaintiffs bring claims under, *inter alia,* 17 U.S.C. § 106.  All Defendants have been served.

## II.   FACTS

### A. Plaintiffs' View:

This case is what happens when the person you hire for technical expertise and to build a website for your business, takes advantage of their technical expertise and steals your website, business, and copyrights right out from underneath you, simply by virtue of technical control over the website. Plaintiffs' operated their online guinea pig cage assembly kit business since 2003 as a sole proprietor,

and then since 2013 as an LLC (CCCages LLC).  Defendants played no ownership role whatsoever in Plaintiffs' business.  Indeed, Defendants' newly invented claim of "joint ownership" over Plaintiffs' business and intellectual property comes only after being sued and scrambling for a defense to justify their brazen theft.

Defendant Murphy was hired as an independent contractor to perform some customer service and promotional duties for Ms. Galanto's cage kit business in 2003.  While Ms. Galanto initialy donated a small portion of her sales to Defendant's pet rescue, later Defendant was paid a small portion of sales for her technical services assisting Plaintiff's business.  In 2012, Ms. Galanto hired Ms. Murphy as an independent contractor to register a domain and build a website on it for Ms. Galanto's cage business.  Ms. Murphy was also paid to serve as the webmaster and perform technical duties for Ms. Galanto's business.  Unbeknownst to Ms. Galanto at the time (2012-2013) however, Ms. Murphy secretly registered Ms. Galanto's Internet domain names, including the exact name matching Ms. Galanto's longtime business name (CCCages.com) and trademark in Ms. Murphy's own name.  Only very recently did Ms. Galanto learn that Ms. Murphy registered Ms. Galanto's Internet domain names in Ms. Murphy's own name.

On 15 December 2022, Ms. Murphy sent Ms. Galanto an email message informing Ms. Galanto that she would be shut out of her online business and that Ms. Murphy would be taking over all sales at Ms. Galanto's website for herself in January 2023.  Ms. Galanto's cage kit business made between $1-3 million in sales each year over the last 5 years, so this was no small heist.  In essence, Ms. Murphy stole Ms. Galanto's entire business away from her by locking her out of the website that she was hired to build for Ms. Galanto in 2012.

In January 2023 Ms. Murphy stated in writing that she would not be using Ms. Galanto's photos in her new business, but she ultimately refused to stop infringing on Ms. Galanto's intellectual property, and now virtually every photo (of the thousands) on Ms. Murphy's website is an infringement of Ms. Galanto's intellectual property.  Ms. Murphy promised in writing to return to Ms. Galanto the CCCages.com domain name that she registered in bad faith, since it matches Ms. Galanto's company name and trademark, but Ms. Murphy also balked on that promise when it was time to do it.

Ms. Murphy also stole the many thousands of online customer reviews for products made, sold, and shipped exclusively by Ms. Galanto over the last 20 years, and now Ms. Murphy tries to pass

them off as customer reviews that she earned, when in fact, Ms. Murphy did not sell her first cage assembly kit until May 2023, after she took over all sales at Ms. Galanto's website.  Now Ms. Galanto is getting emails from unhappy customers who recently bought inferior quality products at Ms. Murphy's store, and are under the false belief that they are purchasing from Ms. Galanto, when in fact, Ms. Murphy has usurped all the sales from Ms. Galanto's website and trades on Ms. Galanto's reputation for high quality products.

Plaintiffs were given no choice but to file this action for copyright infringement, cybersquatting, and unfair competition against Defendants in July 2023 and to enlist the aid of the Courts in the return of their stolen property.  While Plaintiffs made at least 3 separate settlement offers to Defendants, Defendants have ignored them all and not put forth a single settlement offer since the filing of this case in July 2023.

Defendants claim to be "joint owners" of Ms. Galanto's business and property, but they refuse to put forth a single piece of evidence or a single sworn statement that supports that brazen claim.

**B.  Defendants' View**

This case comes after the breakup of a nineteen (19) year business partnership. Plaintiffs and Defendants formerly worked together to market and sell guinea pig cages through various websites. After Plaintiffs stopped working with Defendants, Plaintiffs claim that various continued operations of Defendants violate Plaintiff's copyrights.

**III.    LEGAL ISSUES**

**A.  Plaintiffs' View:**

Plaintiffs anticipate the following legal issues will be argued in this case based on their present allegations:

- Whether Defendants violated the copyrights of Plaintiffs when they used, distributed, displayed, stored, published, and copied Plaintiffs' copyrighted works and whether that infringement was willful.

- Whether Defendants engaged in Unfair Competition under the Lanham Act and/or California law through their use of Plaintiffs' copyrighted works and customer reviews.

- Whether Defendants engaged in Unfair Competition under the Lanham Act and/or California law through their improper use, registration and misappropriation of Plaintiffs' Internet domain names including < CCCages.com > and < GuineaPigCasgesStore.com >.

- Whether Defendants engaged in unlawful cybersquatting (15 U.S.C. § 1125) through their improper use, registration and misappropriation of Plaintiffs' Internet domain names including < CCCages.com > and < GuineaPigCasgesStore.com >.
- Whether Defendants engaged in Unfair Competition or False Advertising under the Lanham Act or 15 U.S.C. § 1125 and/or California law (including BPC §17200 and 17500) through their false and misleading advertising on the GPCS website by falsely passing-off Plaintiffs' customer reviews as though they were reviews for products that Defendants' manufactured, sold, and shipped.
- Whether Defendants engaged in Unfair Competition under the Lanham Act and/or California law when they falsely stated to Plaintiffs' vendor in China in March 2023 that "CCCages LLC has not been selling products and has no direct volume to consumers."
- Whether Defendants intended to deprive Plaintiffs of money and property through fraudulent statements and unfair business practices committed by Defendants.
- Whether Defendants acted with oppression, fraud, or malice in the execution of the unlawful activity described in the complaint.
- Whether Plaintiffs have been harmed and lost significant money and property as a direct and proximate result of Defendants' unlawful activity described in the complaint.
- Whether the public is likely to be or has been confused by Defendants' willful false and misleading statements about products sold, manufactured, shipped by the parties and by their misappropriation of Plaintiffs' website.

**B. Defendants' View:**

Defendants dispute and disagree with all of Plaintiff's legal claims. Most prominently, Defendants assert that any copyrights or trademarks Plaintiffs have alleged to have been infringed were either solely owned by Defendants or jointly owned by Plaintiffs and Defendants. Defendants further assert that, to the extent the intellectual property of the partnership was not jointly owned by the parties, a non-exclusive license was granted to Defendants for their use.

**IV.    MOTIONS**

**A. Plaintiffs' View:**

Plaintiffs are need of immediate relief from the court to get their stolen business and property returned, and so Plaintiffs intend to file a motion for a preliminary injunction in the near future to

adjudicate the critical issues.  Plaintiffs object to Defendants' efforts to stall the progress of the case by filing motion after motion in order to avoid providing an Answer under oath.  Defendants' motion to strike, in which they claimed joint ownership of Plaintiffs' business and property, was not supported by a single declaration, piece of evidence, or statement under oath that supports Defendants' claim to jointly own Plaintiffs' business and property.

**B. Defendants' View:**

Defendants plan to file a motion to dismiss some or all of Plaintiffs' claims based on, among other things, those claims being barred by applicable statute of limitations and failure to state claims upon which relief may be granted.

## V.     AMENDMENT OF PLEADINGS

**A. Plaintiffs' View:**

Plaintiffs intend to file an amended complaint by 17 November 2023.

**B. Defendants' View:**

Defendants have already filed a motion to strike arguing that Plaintiffs pleaded redundant and spurious claims. Defendants have not yet filed a responsive pleading. Defendants believe that amendment of the Complaint is proper and have met and conferred with Plaintiffs to request the same.

## VI.     EVIDENCE PRESERVATION

The parties certify that they have reviewed the Court's Guidelines Relating to the Discovery of Electronically Stored Information, and aware of their obligations, and have taken appropriate steps to preserve potentially relevant evidence.  The parties confirm they have met and conferred concerning such obligations and agree to continue to meet and confer regarding such obligations as issues arise.

## VII.     DISCLOSURES

**A. Plaintiffs' View:**

Plaintiffs will serve their Initial Disclosures on 27 October 2023 as ordered by the Court. Plaintiffs agree to electronic service in all instances where service is necessary and will exchange service lists with Defendants who also agreed to electronic service.  Plaintiffs will serve and supplement Initial Disclosures as necessary, in accordance with Rule 26(e) and Local Rule 11-3.

Plaintiffs do not believe that any changes are required to the timing, form, or requirement for disclosures at this time.

**B. Defendants' View:**

Defendants will serve Initial Disclosures on Plaintiff by the deadline set by the Court.

**VIII.   DISCOVERY**

**A. Plaintiffs' View:**

Plaintiffs intend to immediately begin serving their discovery requests since the Rule 26(f) Meet and Confer occurred on 12 October 2023 and the Joint Rule 26(f) Report was filed with the court on 26 October 2023.  The Court additionally confirmed that discovery is now open at the hearing on 27 October 2023.  Given the fact that Plaintiffs have been locked-out of their own website and business of 20 years for nearly 7 months, Plaintiffs intend to file a motion for a preliminary injunction and immediate discovery is necessary to effectuate that imminent matter.

**B. Defendants' View:**

Defendants believe discovery should be stayed until the pleadings are closed. Not only did Plaintiff file a Complaint spanning sixty (60) pages with over thirty (30) counts, most of which are redundant (as described in Defendants' Motion to Strike), but Plaintiffs have pled a bevy of claims barred by the applicable statutes of limitations. Not all of the claims Defendants will seek to dismiss necessitate overlapping evidence; thus, discovery before resolution of Defendants' motion to dismiss will be a waste of the parties' time and resources where it will include discovery into facts and matters that may be rendered irrelevant by this Court's ruling on Defendants' Motion to Strike and Motion to Dismiss.

**IX.   CLASS ACTIONS**

The parties agree this is not applicable as this case is not a class action and the parties do not anticipate the addition of class allegations.

**X.   RELATED CASES**

The parties are unaware of any other cases that are related to his lawsuit as of today's date.

**XI.   RELIEF**

**A. Plaintiffs' View:**

Plaintiffs have asked for either statutory damages or actual damages (including all of Defendants' profits and Plaintiffs' lost profits) from the unlawful use of Plaintiffs' intellectual property, business, and domain names.  Plaintiffs have also asked for injunctive relief and reimbursement of attorneys' fees and costs necessary in bringing this action.

**B. Defendants' View:**

To the extent that causes of action contained within Plaintiffs' Complaint proceed past the pleadings stage, Defendants intend to file a Counterclaim against Plaintiffs for copyright infringement, fraud upon the US Copyright Office, a violation of the Computer Fraud and Abuse Act, a violation of the Defendant Trade Secrets Act and California Uniform Trade Secrets Act, and various unfair competition claims. Defendants will seek relief in the form of statutory damages, actual damages, Counter-Defendants' profits, costs, and attorneys' fees.

## XII.   SETTLEMENT AND ADR

**A. Plaintiffs' View:**

No settlements have been reached by the parties.  Nor are the parties close to settlement and Plaintiffs do not believe settlement is likely, given how far apart the parties' positions are.  The parties agreed during their Rule 26(f) meet and confer call on 10/12/23 that referral to a formal ADR process is unlikely to be beneficial given the nature of the case and that ADR may unreasonably consume the parties' time and resources.  Plaintiffs contend the case should be exempt from mandatory ADR referral and Defendants stated in the meet and confer that they do not oppose that request.

However, if the Court disagrees and wishes to order ADR, then Plaintiffs are willing to participate in a settlement conference with a magistrate judge.  Plaintiffs are prepared to discuss ADR options and seek the Court's guidance at the 11/3/23 conference.

**B. Defendants' View:**

Defendants are open to settlement and ADR; however, the parties have engaged in initial settlement talks and are currently not close to settlement. Defendants are not agreeable to case evaluation but would participate in early court-managed mediation or a settlement conference with a magistrate judge, if ordered by the Court.

## XIII.   OTHER REFERENCES

The parties agree that this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation

## XIV.   NARROWING OF ISSUES

### A.  Plaintiffs' View:

The parties have not identified any issues that can be narrowed at this juncture but will meet and confer on any such issues as they arise.  The issues of copyright infringement, cybersquatting, and unfair competition are raised in Plaintiffs' complaint.

### B.  Defendants' View:

As argued in their motion to strike, Defendants believe most of Plaintiff's copyright infringement claims are duplicative and spurious. Defendants believe that the primary factual issue in this case is the sole or joint ownership of the works and trademarks alleged to have been infringed.

## XV.   EXPEDITED TRIAL PROCEDURE

It is the parties' position that this case is not the type that can be handled under the Expedited Trial Procedure of General Order No. 64.

## XVI.   SCHEDULING

### A.  Plaintiffs' View:

Plaintiffs' are eager to try the case as soon as possible and believe that an expedient resolution of the dispute is appropriate and necessary.  The Plaintiffs propose the following case schedule:

| Proposed Event: | Plaintiffs' Proposed Dates: |
|---|---|
| Designation of Experts | 1 February 2024 |
| Designation of Rebuttal Experts | 8 February 2024 |
| Fact Discovery Cutoff, including hearings on discovery motions | 15 April 2024 |
| Expert Discovery Cutoff, including hearings on discovery motions | 15 April 2024 |
| Last Day to File Non-Dispositive Motions | 11 June 2024 |
| Last Hearing Date for Non-Dispositive Motions | 16 July 2024 |
| Last Day to File Dispositive Motions | 24 May 2024 |

| Last Hearing Date for Dispositive Motions | 28 June 2024 |
|---|---|
| Last Day to Provide Pretrial Disclosures | 20 July 2024 |
| Final Pretrial Conference Date | 8 August 2024 |
| Trial Date | 29 August 2024 |

**B.  Defendants' View:**

As noted above, Defendants plan to file a Motion to Dismiss and believe it is improper to begin discovery until after that motion is resolved. Therefore, Defendants would request any proposed dates for discovery cutoff, expert disclosures, or other deadlines be set far in advance to allow the Court time to rule on Defendants' Motion to Dismiss.

## XVII.  <u>TRIAL</u>

**A.  Plaintiffs' View:**

Plaintiffs have demanded a jury trial.  Plaintiffs believe a trial will take 2-4 days.

**B.  Defendants' View:**

Defendants believe this trial would take between 3 and 5 days.

## XVIII. <u>DISCLOSURE OF NON-PARTY ENTITIES OR PERSONS</u>

**A.  Plaintiffs' View:**

Plaintiffs will soon file a Certification of Interested Entities or Persons as required by Civil L.R. 3-15.  Plaintiffs certify that as of this date, there is no conflict or interest (other than the named parties) to report.

**B.  Defendants' View:**

Defendants will soon file their Certification of Interested Entities or Persons and note that they are not aware of any other entities or persons who might have (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by thse outcome of the proceeding.

## XIX.  <u>PROFESSIONAL CONDUCT</u>

The parties attest that all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## XX.   <u>OTHER MATTERS</u>

### A. Plaintiffs' View:

None.

### B. Defendants' View:

Due to the fact that the majority of the evidence at issue in this case constitutes ESI, Defendants request that the parties agree and stipulate to the Northern District of California's standard Order for Discovery of Electronically Stored Information for Standard Litigation.

Dated:  27 October 2023

Respectfully submitted,

By: <u>/s/   Robin Gross</u>
Robin Gross
Robin Gross (State Bar No. 200701)
1388 Haight Street, Suite #130
San Francisco, CA  94117
Telephone: (415) 857-0231
Email: Robin@ImagineLaw.com
*Counsel for Plaintiffs CCCages LLC and Susan Galanto*

and

By: <u>/s/   Andrew Jurgensen</u>
Andrew Jurgensen
Andrew Jurgensen (P81123)
John Di Giacomo
Revision Legal, PLLC
444 Cass St., Ste. D
Traverse City, MI 49684
Telephone: (231) 714-0100
Email: drew@revisionlegal.com
          john@revisionlegal.com
*Counsel for Defendants, appearing pro hac vice*

and

John M. Begakis, Esq. (SBN 278681)
ALTVIEW LAW GROUP, LLP
12100 Wilshire Blvd., Suite 800
Los Angeles, California 90025
Telephone: (310) 230-5580
Email: john@altviewlawgroup.com
*Counsel for Defendants, local counsel*

**<u>FILER'S ATTESTATION</u>**

Pursuant to Civil Local Rule 5-1(h)(3), I attest under penalty of perjury that concurrence in the filing of the foregoing document has been obtained from all other signatories to this document.

Dated:  27 October 2023                          By:  *<u>/s/  Robin Gross</u>*
                                                                    Robin Gross