ROBIN GROSS  (SBN 200701)
Law Office of Robin Gross
1388 Haight Street, Suite #130
San Francisco, CA  94117
(415) 857-0231
Robin@ImagineLaw.com

Attorney for Plaintiffs:
Susan Galanto and CCCages LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| SUSAN GALANTO & CCCAGES LLC | **Case No. 3:23-cv-03809-MMC** |
| Plaintiffs, | **VERIFIED COMPLAINT**<br>**(1ˢᵗ Amended)** |
| v. | **COPYRIGHT INFRINGEMENT,**<br>**UNFAIR COMPETITION, AND**<br>**CYBERSQUATTING** |
| TERESA MURPHY & CAGETOPIA LLC | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiffs, SUSAN GALANTO and CCCAGES LLC, by their attorney, Robin Gross, complaining of the Defendants, allege as follows:

## NATURE OF THIS ACTION

1.  This is an action for copyright infringement, unfair competition, and cybersquatting under the laws of the United States (the Copyright Act, codified at 17 U.S.C. § 101, et seq., the Lanham Act, codified at 15 U.S.C. § 1051, et seq., and the Anti-Cybersquatting Consumer Protection Act, codified at 15 U.S.C. § 1125, et seq.) and for unfair competition, false advertising, and conversion under California law.

2.  Nearly every image (among thousands) displayed on the Defendants' website was created by Plaintiffs over the last twenty years, is owned exclusively by Plaintiffs, and is being infringed upon by Defendants through their willful copying, display, and distribution of Plaintiffs' copyrighted works without authorization.  **EXHIBIT A** to this Complaint shows 30 separate instances of Defendants' willful copyright infringement of Plaintiffs' intellectual property on Defendants' website, only a small fraction of the rampant commercial piracy taking place on Defendants' website.  Defendants have also been caught distributing Plaintiffs' copyrighted works to third-parties via email after explicitly being told not to use Plaintiff's copyrighted works.

3.  Nearly every customer review of products that is posted to Defendants' website, in fact, refers to products that were made, sold, and shipped exclusively by Plaintiffs over the last twenty years, and not to products that Defendants make and sell, as Defendants fraudulently claim on the website.

4.  Defendants have misappropriated three Internet domain names away from Plaintiffs and stolen Plaintiffs' entire business away from Plaintiffs by virtue of Defendants' technical role in being hired by Plaintiffs to build a website for Plaintiffs' business in 2012 and for serving as its webmaster ever since.  Defendants have essentially usurped Plaintiffs' entire business away from them by misappropriating Plaintiffs' domain names and locking Plaintiffs out of their own web store, taking over all sales for themselves instead.

## JURISDICTION AND VENUE

5.  This court has original and exclusive subject matter jurisdiction of this action under 28 U.S.C.A § 1338(a) because the action arises under the United States Copyright Act, 17 U.S.C.A. §§ 101 et seq., and 28 U.S.C.A §1332 since the parties hereto are citizens of different states and the amount

in controversy exceeds $75,000, and 28 U.S.C.A. §1331 since the dispute or question is primarily

a matter of U.S. federal law.

6. This court has supplementary jurisdiction over Plaintiffs' pendant state law claims pursuant to 28

U.S.C. § 1367 in that the state law claims are integrally interrelated to Plaintiffs' federal claims

and arise from a common nucleus of operative facts such that the administration of Plaintiffs'

state law claims with their federal claims furthers the interest of judicial economy.

7. This court has personal jurisdiction over Defendant, Teresa Murphy because she resides in this

District in Sunnyvale, California.

8. This court has personal jurisdiction over Defendant, Cagetopia LLC because California is the

state in which Cagetopia LLC is organized, it maintains its principal place of business in this

District at the address 342 Lastreto Avenue, Sunnyvale, California, is registered to conduct

business in California, and has sufficient minimum contacts with California.

9. This court also has personal jurisdiction over each of the Defendants because each conducts

systematic and continuous business in the State of California.  This court also has personal

jurisdiction over each of the Defendants because a substantial part of events or omissions giving

rise to Plaintiffs' claims occurred in this District.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this

District and are subject to personal jurisdiction in this District.  Venue is also proper pursuant to

28 U.S.C. § 1391(b)(2) because a substantial part of events or omissions giving rise to Plaintiffs'

claims occurred in this Judicial District.

## THE PARTIES

11. Plaintiff Susan Galanto is an individual and resident of the State of Connecticut and is the owner

and operator of CCCages LLC.

12. Plaintiff CCCages LLC is a Limited Liability Company registered with the State of Connecticut with its principal place of business in Connecticut. CCCages LLC manufactures, sells, and ships a wide variety of ready-to-assemble cage kits and related accessories to pet owners throughout the United States and abroad.

13. Plaintiffs are the copyright registrants for all and each of the photographs, images, and "Directions" for the Copyrighted Works at issue in this case.

14. Upon information and belief, that at all times hereinafter mentioned Defendant Teresa Murphy is a resident of Santa Clara County, California, and is the owner and operator of Cagetopia LLC.

15. Upon information and belief, that at all times hereinafter mentioned Defendant Cagetopia LLC is a California Limited Liability Company organized in January 2023 with its headquarters and principal place of business at 342 Lastreto Avenue, Sunnyvale, California.

## **FACTUAL ALLEGATIONS**

16. In 2001, Plaintiff Susan Galanto began making guinea pig cages after her daughter obtained a new pet guinea pig and she noticed that pet store cages were too small. Ms. Galanto found and used the free instructions made available by Defendant Teresa Murphy who ran a guinea pig rescue called "Cavy Cages" at the Internet URL < cavycages.com >, which provided information about guinea pig care including free instructions for consumers to build their own cages. Ms. Galanto also joined online discussion forums regarding guinea pig care where she learned that other members were not able to make their own cages because they could not find the right materials and did not have the time required to build a cage for their pet. Ms. Galanto realized the market need for ready-to-assemble cage kits and she learned how to make and ship them economically all by herself.

17. On 15 June 2003, Plaintiff Susan Galanto contacted Defendant Teresa Murphy regarding Ms. Galanto's plan of manufacturing and selling ready-to-assemble cage kits for guinea pigs.  Neither Ms. Murphy's website nor Ms. Murphy manufactured, sold, nor shipped any cages, nor any ready-to-assemble cage kits at the time, nor any previous time; Ms. Murphy's website merely provided free information to consumers as to how to do it for themselves at home.  A copy of the initial email message Ms. Galanto sent to Ms. Murphy with Ms. Galanto's idea is attached herewith as **EXHIBIT B**, which includes the parties' email exchange from 15 June 2003 through 9 July 2003.

18. In Ms. Murphy's email response to Ms. Galanto on 16 June 2003, Ms. Murphy admitted that "I never seriously considered doing it myself" due to shipping challenges.  Ms. Murphy's response also stated, "But if you can make it work, it's a free country and nothing is trademarked or patented – on purpose.  It's for the pigs, not for me.  That said, I would appreciate a small donation with each sale." (EXHIBIT B).

19. Ms. Murphy also stated in her email response to Ms. Galanto on 9 July 2003, "If you do this, I would put you as the source of the cages on the front page of cavy cages.  That would definitely get you some attention.  I get emails every so often asking me where you can buy cages.  So for every email I get there are probably 10 people interested who don't email (at least)." (EXHIBIT B).

20. Ms. Galanto began making and selling cage kits in 2003 under the trademark "CCCages" and she agreed to make a small donation to Ms. Murphy's animal rescue with each cage kit sale that Ms. Galanto made and sold.  Initially, Ms. Galanto sold her cage kits exclusively via eBay using Ms. Galanto's eBay account name "cc_cages" in 2003.

21. After some months, Ms. Murphy also posted a page to Cavy Cages where Ms. Galanto's kits could be purchased. Ms. Murphy referred people to Ms. Galanto's business, CCCages, to buy the kits in 2003 via Cavy Cages, various online forums, email messages, and another website operated by Ms. Murphy at the URL < GuineaPigCages.com >.

22. Ms. Galanto operated her business using the trademark "CCCages" as an individual sole proprietor in 2003 and subsequently organized as a Connecticut Limited Liability Company (LLC) in 2013, called CCCages LLC, to operate her business of manufacturing, selling, and shipping ready-to-assemble cage kits. Ever since 2013 Ms. Galanto has operated her cage kit business via her company, CCCages LLC, and she has continued to use the trademark "CCCages" in connection with the sale of cage kits sold by her company.

23. In the development of her cage kit business since 2003, Ms. Galanto has created hundreds of "Directions" to guide her customers in how to assemble the products that she makes, sells, and ships to them. A paper copy of the "Directions" created by Ms. Galanto is shipped with the corresponding product that is purchased by the consumer so as to explain the product's assembly. Ms. Galanto created all of the photographs, text, and any other artwork used on the "Directions" that she ships with the corresponding product. Ms. Galanto and CCCages LLC are the exclusive copyright owners of all Directions, photographs, and other intellectual property created by them and shipped with their products. A sample of some of the Directions that Plaintiffs own and have registered with the US Copyright Office is attached as **EXHIBIT A**, which shows 30 different sets of Directions that are Copyrighted Works registered by Plaintiffs and infringed upon by Defendants.

24. Ms. Galanto agreed to hire Ms. Murphy in 2003 to work as a part-time independent contractor to provide Internet and technical expertise for Ms. Galanto's business, as well as some promotion

and customer service tasks.  Ms. Murphy was hired to build and maintain a webstore for Ms. Galanto's cage kit business at the URL < guineapigcages.com > and Ms. Galanto made a voluntary small donation with each sale to a guinea pig rescue for those services, beginning in 2003.

25. Immediately after being hired to build Ms. Galanto's webstore in 2003, and continuing until roughly 2010, Ms. Murphy paid very little attention to Ms. Galanto's cage kit business, and she had almost no role whatsoever in Ms. Galanto's business.  The contact information for customer service listed on the website was Ms. Galanto's email address of CCCages@aol.com, which Ms. Murphy had no access to.  Ms. Galanto performed 100% of the customer service during this time by email through CCCages@aol.com.

26. From roughly 2003-2007, Ms. Galanto's webstore at  < guineapigcages.com > processed all orders that came in.  Ms. Galanto only took PayPal payments on her own PayPal account, which is the same account she uses today for her sales.  Ms. Galanto was also still independently selling her cage kits via eBay, on her own eBay account with the account name "cc_cages" in this time.

27. Around 2008, the webpage was experiencing a glitch which prevented customers from purchasing certain items.  Despite Ms. Galanto's many requests to Ms. Murphy to please fix Ms. Galanto's webstore, Ms. Murphy did not fix the website and she had virtually no role whatsoever in Ms. Galanto's cage kit business for several years.  Given Ms. Murphy's unwillingness to fix the website that she had been hired to maintain, Ms. Galanto decided she would probably have to move her business to a new webstore, where she could hire someone more reliable to maintain it.  Ms. Galanto obtained an estimate for someone else to build her a new webstore and considered moving her store there.  But Ms. Galanto decided that she would give Ms. Murphy one last

opportunity to continue to work for Ms. Galanto, and in 2010 Ms. Galanto flew out to California to meet with her and decide if she should keep Ms. Murphy on as her webmaster for her store.

28. Upon Ms. Galanto's arrival to California, Ms. Murphy had begun working on a new website < GuineaPigZone.com > where she would place Ms. Galanto's webpage going forward.   Ms. Galanto found this to be a big improvement so she decided to keep Ms. Murphy on as webmaster for her store.

29. The new website at the URL < GuineaPigZone.com > was a reference site for animal rescues, including such information as where to find materials, how care for guinea pigs, etc., and she added a page to buy Ms. Galanto's cage kits to the new website.   In 2011, PayPal policy began distributing 1099-K's to businesses.   Ms. Galanto received the 1099-K, and Ms. Galanto's accountant started providing 1099-MISC's to Ms. Murphy in 2011.

30. In 2012, Ms. Murphy wanted Ms. Galanto to incorporate fleece into her business, but Ms. Galanto could not accommodate that request.   So Ms. Murphy recruited Jenny Sawyer in Michigan to sew fleece, and Ms. Murphy branched off GuineaPigZone into Guinea Pig Market (GPM) for Jenny and GPCS for Ms. Galanto's store only.

31. In 2012, Ms. Galanto hired Ms. Murphy as a Form 1099 independent contractor to build a website at the Internet URL < GuineaPigCagesStore.com > (**GPCS**) for Ms. Galanto's rapidly growing cage kit business[1].   Among the tasks assigned to Ms. Murphy for her technical services, Ms. Murphy was supposed to register the Internet domain names for the GPCS webstore in the name of Ms. Galanto, who was paying for 100% of its construction so that Ms. Galanto could continue

---

[1] Ms. Murphy also registered the URL for GuineaPigCageStore.com (singular) in addition to GuineaPigCagesStore.com (plural) for Ms. Galanto's web store in 2012.  GuineaPigCageStore.com (singular) also redirects all web traffic to GuineaPigCagesStore.com (plural) by Ms. Murphy.  As used in this Complaint "GPCS" refers to both URLs, the singular and the plural versions for Ms. Galanto's webstore that was stolen by Defendants.

to sell products that she made and shipped from the website.  Unbeknownst to Ms. Galanto at the time however, and upon information and belief, Ms. Murphy actually registered the Internet domain names for the GPCS website that she was hired to build for Ms. Galanto in Ms. Murphy's own personal name in 2012.  Ms. Galanto did not realize that Ms. Murphy had secretly registered the GPCS domain names in Ms. Murphy's name instead of Ms. Galanto's name until 2022.

32. Upon information and belief, in January of 2013, Ms. Murphy also secretly registered the Internet domain name < CCCages.com > in her own name, despite her decade-long knowledge that the term "CCCages" matched Ms. Galanto's trademark and business name.  Ms. Murphy forwarded all web traffic aimed at CCCages.com to GPCS.  Ms. Galanto did not realize that Ms. Murphy had secretly registered < CCCages.com > in Ms. Murphy's name instead of Ms. Galanto's name until 2022.

33. The Internet Archive's (aka "Wayback Machine") record of the text on the GPCS website for many years and until recently, which was written and posted by Ms. Murphy, who recently deleted it, describes the relationship between the parties as follows:

"In 2001, Sue Galanto, of East Hampton, Connecticut, refusing to purchase a too-small pet store cage for her daughter's new guinea pigs, searched online for a better cage solution and found Teresa's website.  After making a cage and joining the forum, she noticed many members couldn't find materials or didn't have the time to make their own.  Once she figured out how to box and ship various cage sizes, she contacted Teresa in 2003 with a "C&C Cage Kit" idea.  Teresa agreed and created a basic cage store page on her GuineaPigCages.com website.  Sue operated the cage store in Connecticut offering simple, one-level cage kits in just two colors.

Over the next seven years, C&C cages were becoming very popular.  So in 2010, GuineaPigZone [URL to < GuineaPigZone.com >] was created: a central directory for rescues, vets, resources for cage materials, adoptable guinea pigs as well as the cage kits.  As the creative juices flowed, the cage designs evolved, and the product line expanded quickly to include lofts, ramps, kitchens, stands, cubbies, and more.  This prompted the need for a separate, ecommerce-only website: the Guinea Pig Cages Store [URL to < GuineaPigCagesStore.com >].  Their 18+ year commitment continues today with 16

Coroplast colors (two are custom), offering only high-quality, safe, beneficial products for guinea pigs and their caretakers … and they're just getting started.  Stay tuned!"

34. Ms. Galanto's and CCCages LLC's business continued to grow with the company selling many thousands of cage kits and related accessories from 2003 – 2023, which were all manufactured, sold, and shipped exclusively by Plaintiffs.  Plaintiffs sold between $1.5 million - $3 million in products each year between 2018-2022 at their GPCS webstore.

35. Then, on 15 December 2022, Ms. Murphy unilaterally and without any warning sent Ms. Galanto an email message informing Ms. Galanto that Ms. Murphy was cutting Ms. Galanto out of her cage kit business at GPCS at the beginning of January 2023, taking it over for herself with the use of a third-party logistics provider to make and ship the cage kits instead of Plaintiffs. Specifically, Ms. Murphy stated, "Due to other timing issues on plans for 2023 with my new partner, it is necessary to put things in motion asap, right after the first of the year.  The transition will be happening over the first quarter."  A copy of the aforementioned email message of 15 December 2022 from Ms. Murphy to Ms. Galanto is attached herewith as **EXHIBIT C**.

36. When Ms. Galanto complained to Ms. Murphy about being cut-out of her own business on extremely short notice, Ms. Murphy agreed to allow Plaintiffs until 30 April 2023 to sell their cage kits from orders taken by the GPCS website; and after that transition date, Ms. Murphy said she would take over all sales from orders taken via the GPCS website, (the website which Ms. Galanto had hired Ms. Murphy to build for Ms. Galanto's cage kit business in 2012).

37. On 6 January 2023, Ms. Murphy sent Ms. Galanto an email message admitting in writing her understanding that she no longer had the right to use Plaintiffs' copyrighted works after the transition when she stated, "I'll be reshooting images and won't be using photos that you took." Ms. Murphy also seemed to acknowledge in that email to Ms. Galanto on 6 January 2023 that the

domain name < CCCages.com > properly belonged to CCCages LLC because she promised to transfer it upon transition.  A copy of the aforementioned email message of 6 January 2023 from Ms. Murphy to Ms. Galanto is attached herewith as **EXHIBIT D.**

38. In March 2023, Ms. Murphy sent an email message to Plaintiffs' vendors in China falsely claiming that Plaintiff was not the seller of Plaintiffs' assembly kits for the last two decades. Specifically, Ms. Murphy falsely stated, "CCCages LLC has not been selling products and has no direct volume to consumers."  Of course, Defendants are perfectly aware that Ms. Galanto and CCCages LLC sold the assembly kits for more than 20 years and are also fully aware that CCCages LLC has sold thousands of products directly to consumers.  By making these intentionally false statements to Plaintiffs' vendor, Ms. Murphy intended to harm Plaintiffs' business and reputation, and falsely claim that business and reputation for herself, even though she had not shipped a single cage kit yet.  Attached herewith as **EXHIBIT E** is a copy of the message Plaintiffs received in March 2023 from their vendor in China showing Plaintiffs the aforementioned email message they had received from Defendants that included the false and misleading statements.

39. On 8 April 2023, Ms. Galanto again requested to Ms. Murphy that she honor her agreement to transfer the < CCCages.com > domain name to CCCages LLC in an email stating, "Please transfer it to me within the next week.  The gpcs site can run until 30 April with my production, after that we are moving on per the agreed date.  CCCages is my company name and you said you would transfer that to me.  I hoped this could be an amicable solution that you would keep your word and I would keep mine."  In response, Ms. Murphy stated "I'm not making any business changes until I'm ready to make the switch.  I'm not ready yet, probably not until July/August at this point."

40. On 1 May 2023, Ms. Galanto was cut-out of all sales on her GPCS website by Ms. Murphy, who then transferred all sales to herself on that date, by virtue of Ms. Murphy's technical expertise in management of critical Internet resources, such as domain names, and providing webmaster duties, essentially usurping Ms. Galanto's business away from her.

41. Upon information and belief, Defendants sold and shipped their first guinea pig cage assembly kit ever in May 2023.

42. On 24 May 2023 and again 26 May 2023, Ms. Galanto sent Ms. Murphy email messages informing Ms. Murphy that she was not authorized to use any of Plaintiffs' copyrighted images or other content on the stolen GPCS webstore or elsewhere.

43. Defendants currently operate the GPCS website including its web store, presently selling cage assembly kits to consumers and have done so since 1 May 2023.

44. Upon information and belief, nearly every photograph (out of the thousands) currently posted on the GPCS website was created by Plaintiff Susan Galanto over the last twenty years and is currently being used by Defendants for commercial purposes without authorization of the exclusive copyright holders, Plaintiffs.  Ms. Galanto also edited the thousands of photographs multiple times over a twenty-year period based on numerous product modifications that she made.

45. Upon information and belief, on 16 and 17 May 2023, a GPCS customer, Brooke Bailey, purchased several items from the GPCS website which required assembly.  Defendants shipped the products to the customer in Massachusetts, who received them on 30 May 2023.  On 31 May 2023, the customer emailed support at GPCS and asked for a refund for her assembly kits because the kits Defendants sent her contained no Directions or other guidance on how to assembly the products and seemed to differ from the products showing on the GPCS website.   Instead of

honoring the customer's request for a refund, Ms. Murphy emailed the customer in Massachusetts entire copies of two of Plaintiffs' copyrighted works, which were assembly Directions created by Plaintiff that corresponded to products the customer had received.  Specifically, on 31 May 2023, Ms. Murphy emailed Brooke Bailey a copy of Plaintiffs' Copyrighted Work #1 entitled "*Assembly Instructions for all Standard Cages*" as a Portable Document File re-named "*GPCS Stand Instructions.pdf*" by Defendants.

46. In that same email message, Ms. Murphy additionally emailed the customer a copy of Plaintiffs' Copyrighted Work #29 entitled "*Cage Stand Assembly Directions*" as a Portable Document File re-named "*GPCS Cage Instructions.pdf*" by Defendants.  Exhibit A to the Declaration of Brooke Bailey in Support of this Complaint is a copy of the aforementioned email correspondence between Ms. Murphy and Ms. Bailey including copies of the two sets of PDF instructions that Ms. Murphy sent to Ms. Bailey in that email message on 31 May 2023, and which infringe Plaintiffs' copyrights to their Directions.

47. Plaintiffs instructed their attorney to send a letter to Defendants on 20 June 2023 re-stating the facts that Plaintiffs are the exclusive copyright owners of all Directions, images, and other intellectual property created by Plaintiffs, and demanding that Defendants cease and desist from their misappropriation of Plaintiffs' domain names and their willful infringement of Plaintiffs' copyrighted works including the 30 specific Copyrighted Works listed in EXHIBIT A to this Complaint.  Defendants were additionally warned that they were in violation of unfair competition laws for misleading the public into believing that they are the manufacturer of the cage kits sold at the GPCS webstore for the last twenty years, when they are not.

48. Defendants were also instructed to remove from GPCS all customer reviews for cage kit shipments made up until 30 April 2023 since those reviews were earned exclusively by Plaintiffs

for cage kits manufactured, sold, and shipped exclusively by Plaintiffs before they were cut-out of their own business on 1 May 2023 by Defendants.

49. Plaintiffs have received several email messages from previous GPCS customers who have purchased products at the website after May 2023 and who expressed dismay and confusion over the inferior quality of the products sold at that website since Defendants took it over for themselves.  See the attached **EXHIBIT F**, which shows two of such complaints from GPCS customers to Plaintiffs on 20 and 23 October 2023 for products made and shipped by Defendants, but purportedly believed to be made and shipped by Plaintiffs, causing consumer confusion and the tarnishing of Plaintiffs' business reputation.

50. Immediately below are screenshots taken 27 July 2023 by Plaintiffs showing a small sampling of Defendants' brazen misappropriation of Plaintiffs' customer reviews on the GPCS website in order to sell Defendants' products.  Many of these customer reviews below expressly mention Plaintiffs "Sue" and "CCCages" by name, directly attributing Plaintiffs with the positive customer experience and high quality products that they obtained at GPCS when they previously purchased Plaintiffs' cage kits at the URL.

1

The McDonnell
Family
Richmond, VA

**Amazing quality, Amazing customer service**                                4/3/2014

Rating: ★★★★★

Our family started out with 1 piggie in a Midwest cage and ended up with 3, so I scoured this site and the forum and decided to build my own C&C cage. I think it says a lot that, while there is a store here where you can buy complete cages, they also provide detailed instructions for making your own, along with information on all the places you can purchase your own components – they don't care whether you buy from them or not, they care about the guinea pigs first. So, we built a C&C cage and all was well. We then decided to add a wide 2x2 loft, and since I already had leftover grids (ordered on Amazon) and leftover coro (purchased at Home Depot), I contacted Sue to see if I could just purchase a ramp and a special cut grid (for the recessed ramp). She was so helpful and quick to respond! In the end, we decided to just order the entire loft, including coro, grids, ramp, connectors, etc - deciding to using our leftover grids for future expansion of our cage. I placed my order on 3/26, it was shipped on 3/27, and I got it on 3/29 – 3 days after placing the order. You can't ask for better turnaround than that! What I was most impressed with, however, was the QUALITY of the components. The first thing I noticed was that the connectors and grids are thicker and sturdier than the ones I ordered from Amazon (I can't tell you how many connectors I snapped or how many grids I had to "unbend" or "square off" putting my cage together originally). The coroplast base material for the loft is much thicker, sturdier, more solid, and I feel like it's going to last significantly longer than the coro I bought from Home Depot. I really wish I would have bought my original cage/materials here to begin with, but for sure all future materials purchases will be from the Cage Store! The whole overall experience was great!

Laurie

**Cccages' ramp is safe and amazing!!**                                4/8/2012

Rating: ★★★★★

I get confused pretty easily when I am embarking on a new adventure. I found this site through a rescue, overwhelmed myself with tons of other information, and ended up purchasing our dream cage from someone else! Sue was so wonderful and kind when she gently pointed out that I made this mistake. So I ordered other items, and I noticed that I haven't seen them 3 weeks later. I contacted Sue and she and I couldn't believe that it was already sent and gone! I never saw the almost 30 lbs box :-( Sue was incredible!!!! She not only reshipped my order but also triple checked with me on a daily basis to see if it has been delivered! When it came, the QUALITY of the the 9x9 grids is way better than the other grids I have. The ramp has been throughly thought out and constructed. Compared to the other ramp, this CCcages ramp is safe and amazing!! Thank you Sue for your kind heart and courtesy to a new cavy owner! I will tell everyone about you!!! Laurie

Daun Pringle

**Driving the dog nuts, now!**                                11/8/2009

Rating: ★★★★★

I had a modified CAC cage, and I was using cardboard boxes for the bottom. Got very tired of trying to find appropriate size boxes. I ordered the coroplast from Sue, and it was a fab addition! I already had the grids. However, we did a cage upgrade when we got the coroplast from Sue. We have 2x4 bottom w/ a 2x2 top level. I have never seen such happy pigs! They are running circles, jumping, squeaking...and driving the dogs nuts with all their activity now. Thanks!

**Cinnamon and Poppy's mom**

**Great Quality and Service!!!**                                                    12/8/2018

Product: ★★★★★
Service: ★★★★★

This cage exceeded my expectations. The design is perfect for my two girls. The loft is a great addition; they take turns chilling out when they occasionally get annoyed with each other. They also stay up there when I clean the main area of the cage. The cage was easy to put together with clear directions. I was also impressed with the notes that outlined care for guinea pigs and the importance of adoption and rescue. Sue was outstanding during the entire process of my purchase. She helped to confirm my very rural ( read confusing) address and the cage was delivered promptly.

**Maggie**

**Piggies love it**                                                                 7/11/2010

Rating: ★★★★★

I had adopted two pigs from the humane society, and not knowing any better bought them a "large" cage at a Petstore. My cousin came over (and being a pig owner) told me about the idea of C&C cages. I loved it and checked it out on the website. I tried around my neighborhood to find a sign store but it was impossible for me to find one. I went on to this site and realized that you could buy them here. I bought the green 2x4 Coroplast base from Sue and it was delivered. I set it up and I already had the Cubes. It was so easy to set up. Finally, I put in the piggies. I put them in and they started running around popcorning and having a blast! I am so glad I got the cage, it was worth every penny! It is so easy to clean and i can put a lot more hidey houses which makes them fun and not fight! It was great and I cannot thank you enough! I and the piggies love it!

**Michele**

**Bugsy acts like a member of the family now**                                      6/3/2010

Rating: ★★★★★

My daughter's friend gave her the daddy guinea pig after their other "male" had babies. Ahh the joys of pet store accuracy in Guinea Pig sexing! Anyway her friend kept the mama and 4 babies & we got the daddy. I knew nothing about piggies & he lived in the Petco "large" cage. It really was the size of our old cat's litter box! I was looking for a bigger cage that wouldn't break the bank & was having very little success. A co-worker who used to have piggies told me to Google your site. I found the cubes in Wal-Mart & ordered the coroplast from Sue. Just got it together tonight & Bugsy is happy as a clam! He is squeaking popcorning & running around. He used to popcorn when I would feed him but now he is doing it just because. Took him some time to get used to the ramp but now he runs up to the hayloft gets his timothy hay & then runs back down. I am so happy that I found your site & learned so much about how to keep my piggie happy. Bugsy is a member of our family & I'm sure he feels like one now! Yay!!

51. Again on 10 July 2023, Plaintiffs' attorney sent a cease and desist demand letter to Defendants' attorney in Michigan over Defendants' continued willful infringement of Plaintiffs' copyrighted works, Defendants' violation of unfair competition laws, and their misappropriation of Plaintiffs' Internet domain names < GuineaPigCagesStore.com > and < CCCages.com >.  Plaintiffs again warned of imminent litigation over Defendants' continued fraudulent use of 20+ years of online customer reviews earned by Plaintiffs through Defendants' misrepresenting those reviews as though they were received for products that Defendants' manufactured and shipped.    Plaintiffs

received no response to this 10 July 2023 letter to Defendants' attorney warning of forthcoming litigation.

52. As of the date of this filing, Defendants continue to willfully infringe on Plaintiffs' copyrighted works on the GPCS website; continue to direct all web traffic aimed at < CCCages.com > to Defendants' GPCS webstore instead of to a website registered to and owned by Plaintiff CCCages LLC; continue to fraudulently misrepresent to the public that the hundreds of customer reviews earned by Plaintiffs over two decades belong to Defendants, who have only sold cage kits since May 2023.

## FIRST CAUSE OF ACTION:
## COPYRIGHT INFRINGEMENT

53. Plaintiffs replead and reallege each and every allegation contained in preceding paragraphs of this Complaint, as if specifically pleaded herein.

54. Plaintiffs are the exclusive proprietor of all rights, title, and interest in and to the copyright of each and all of the 30 "Directions" at issue in this case, including all copyrightable aspects, such as all photographs, text, and related artwork included thereon.  Plaintiffs registered the copyrights to the Directions with the US Copyright Office pursuant to 17 U.S.C.A § 411(a). (EXHIBIT A).

55. All and each of the 30 Directions discussed herein contain material wholly original with and owned by Plaintiffs and are copyrightable subject matter under the laws of the United States.

56. EXHIBIT A attached hereto begins with a Summary Table of Defendants' infringement of the copyrights to each of the 30 Directions at issue in this case.  The Summary Table includes information for each of the 30 Directions ("Copyrighted Works") at issue, including the work's title, US Copyright Office registration number, year of creation, date of registration, and URLs controlled by Defendants that infringe upon each work.  Attachments 1-30 to EXHIBIT A then

provide a deposit copy of each of the 30 Copyrighted Works owned by Plaintiffs and photographs of the infringement of those works on the website operated by Defendants at the URL <guineapigcagesstore.com> in June 2023.

57. Defendants, Teresa Murphy and Cagetopia LLC, infringed Plaintiffs' copyrights in each of the 30 Copyrighted Works in violation of the US Copyright Act, 17 U.S.C.A. § 101 et seq., by knowingly and willfully publishing the photographs used in the 30 Copyrighted Works without the consent or authorization of the Plaintiffs, after Defendants were told not to use the Works, and after Defendants promised in writing that they would not use Plaintiffs' Works.

58. Defendants, Teresa Murphy and Cagetopia LLC, also infringed Plaintiffs' copyrights in Copyrighted Works #1 and #29 by emailing a copy of those Directions to Brooke Bailey on 31 May 2023 without the consent or authorization of the Plaintiffs and even after being expressly warned not to use them by Plaintiffs.  Exhibit A to the Declaration of Brooke Bailey is a copy of that email message from Ms. Murphy to Ms. Bailey showing Defendants' willful infringement of Copyrighted Work #1 and #29 on 31 May 2023.  Specifically, Ms. Murphy distributed via email to Ms. Bailey a .pdf file named "GPCS Cage Instructions.pdf", which is a copy of Plaintiffs' Copyrighted Work #1 and also the .pdf file named "GPCS Stand Instructions.pdf", which is a copy of Plaintiffs' Copyrighted Work #29.

59. As a result of the foregoing, Plaintiffs have been damaged in an amount not less than One Hundred and Fifty Thousand Dollars ($150,000) per Copyrighted Work infringed.

60. As a result of Defendants' willful and knowing conduct, Defendants infringed the 30 Copyrighted Works of the Plaintiffs, who are entitled to enhanced statutory damages.

**SECOND CAUSE OF ACTION:**

**FRADULENT AND UNFAIR BUSINESS PRACTICES IN VIOLATION OF THE**

**UNFAIR COMPETITION LAW ("UCL") CAL. BUS. PROF CODE - § 17200, ET SEQ.**

61. Plaintiffs replead and reallege each and every allegation contained in preceding paragraphs of this Complaint, as if specifically pleaded herein.

62. California's UCL § 17200 defines unfair business competition to include any "unlawful, unfair, or fraudulent act or practice and unfair, deceptive, untrue, or misleading advertisement."

63. An action based on UCL § 17200 to redress an unlawful business practice borrows violations of other laws and treats them as a violation of §17200.   In other words, a business practice is "unlawful" under § 17200 when it violates another federal, state, or local law, whether or not the other law contains a private right of action.

64. UCL §§ 17203 and 17204 allow private parties who have lost money or property as a result of Defendants' unlawful business practices to ask a court to enjoin such practices.

65. Defendant Teresa Murphy committed an act of unfair competition in violation of § 17200 when she fraudulently registered the Internet domain names for the website she was hired to build for Plaintiff < GuineaPigCagesStore.com > in her own name instead of in the name of the person who hired her to register and build it, the Plaintiff, in essence stealing the domain name away from the proper registrant who had paid for its construction.

66. Defendants' willful infringement of Plaintiffs' Copyrighted Works, and their misappropriation of Plaintiffs' Internet domain names, and their false and misleading advertising on the GPCS website by falsely passing-off Plaintiffs' customer reviews as their own all constitute unfair competition in violation of § 17200.

67. Defendants' false statements via email to Plaintiffs' vendor in China in March 2023 that "CCCages LLC has not been selling products and has no direct volume to consumers" also

constitutes an unfair business practice violating § 17200 as it was intended to deprive Plaintiffs'
of money and property through a fraudulent statement and unfair business act committed by
Defendants.

68. Defendants have acted with oppression, fraud, or malice in the execution of their unlawful
activity described in this complaint.

69. Plaintiffs have been harmed and lost significant money and property as a direct and proximate
result of Defendants' unfair competition which has resulted in the brazen usurpation of Plaintiffs'
decades-long business as described in this Complaint.

## THIRD CAUSE OF ACTION:
## VIOLATION OF CALIFORNIA'S FALSE AND MISLEADING ADVERTISING LAW
## CAL. BUS. PROF CODE § 17500, ET SEQ.

70. Plaintiffs replead and reallege each and every allegation contained in preceding paragraphs of this
Complaint, as if specifically pleaded herein.

71. Defendants' acts and practices, as described herein, have deceived and / or are likely to continue
to deceive the public in violation of California B.P.C. § 17500.  Defendants' unlawful use on the
GPCS webstore of hundreds of customer product reviews for products that were manufactured,
sold, and shipped exclusively by Plaintiffs amounts to false and misleading advertising because
the reviews do not reflect the products sold by Defendants.  Defendants' products are of inferior
quality, are made by a different manufacturer using different materials and specifications than the
products made and shipped by Plaintiffs.  Yet Defendants' mislead the public when they pass-off
the 20+ years of customer reviews actually earned by Plaintiffs as though the reviews relate to
products made and shipped by Defendants, who sold and shipped their first cage kit ever in May
2023.

72. Plaintiffs have been and continue to be harmed by Defendants' false and misleading advertising and use of Plaintiffs' customer reviews on the GPCS website to fraudulently promote their own products.   Consumers have been and continue to be confused and tricked into purchasing Defendants' products due to Defendants' false and misleading advertising.

**FOURTH CAUSE OF ACTION:**

**VIOLATION OF ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT**

**("ACPA")  - 15 U.S.C. § 1125(d)**

73. Plaintiffs replead and reallege each and every allegation contained in preceding paragraphs of this Complaint, as if specifically pleaded herein.

74. Defendants registered the Internet domain name < CCCages.com > in bad faith with the intent to profit from the mark.  CCCages is Plaintiff's trademark since 2003 as well as its trade name since 2003.  "CCCages.com" is identical to or confusingly similar to Plaintiff's protected mark and tradename.  Defendant Teresa Murphy performed work for Ms. Galanto for over 10 years before she secretly registered the domain name matching Ms. Galanto's trademark and company name for herself.

75. All Internet traffic directed toward < CCCages.com > is instead redirected by Defendants to < GuineaPigCagesStore.com >, which is the direct competitor of the Plaintiffs.  Defendants' actions through their redirection of Internet traffic causes confusion and amounts to a misappropriation the goodwill and reputation of Plaintiffs' business for quality cage kits.

76. Defendants promised in writing to transfer the domain name < CCCages.com > to Plaintiffs upon a "smooth transition" that cut Plaintiffs out of their own business.  Defendants have used the domain name of Plaintiff's mark and company name to get leverage in a business dispute, further establishing Defendants' bad faith intent.  Despite Defendants' promise to transfer the domain

name, Defendants have refused to honor their promise and transfer it, and they continue to redirect its web traffic toward Defendants' website instead.

77. Plaintiffs have been damaged by Defendants' wrongful cybersquatting of the domain names matching Plaintiffs' trademark and tradename by diverting web traffic intended for Plaintiffs' business to Defendants' business instead.  Defendants' cybersquatting on the domain name has and is likely to cause confusion among consumers seeking cage assembly kits on the Internet in violation of 15 U.S.C. § 1125(d).

## FIFTH CAUSE OF ACTION:

## FALSE AND MISLEADING DESCRIPTIONS IN COMMERCE - 15 U.S.C. § 1125(a)

78. Plaintiffs replead and reallege each and every allegation contained in preceding paragraphs of this Complaint, as if specifically pleaded herein.

79. Defendants' unlawful use on the GPCS webstore of hundreds of customer product reviews for products that were manufactured, sold, and shipped exclusively by Plaintiffs amounts to false and misleading descriptions and representations of fact because the reviews do not reflect the products sold by Defendants.

80. The customer reviews are false and misleading as applied to Defendants' products because Defendants' products are of inferior quality and are made by a different manufacturer using different materials and specifications than the products made and shipped by Plaintiffs.  Yet Defendants' mislead the public when they pass-off the 20+ years of customer reviews actually earned solely by Plaintiffs as though the reviews relate to products made and shipped by Defendants, who sold and shipped their first cage kit ever in May 2023.

81. As a result of Defendants' conduct described herein, Defendants misrepresent the nature, quality, and characteristics of the goods they sell in their promotional descriptions on the GPCS website

in violation of 15 U.S.C. § 1125(a).  The descriptions in the customer reviews actually refer to Plaintiffs' products, not Defendants' products, and are thus a misrepresentation of the goods they sell.

82. Plaintiffs are damaged by Defendants' unlawful conduct and the public is likely to be and has been confused by Defendants' willful false and misleading statements about products that Defendants have neither made nor shipped prior to May 2023.  The hundreds of customer reviews that Defendants have stolen from Plaintiffs and use to mislead the public into believing the reviews apply to products that Defendants sell continues to cause damage to the Plaintiffs and the public.

## SIXTH CAUSE OF ACTION:
### CONVERSION

83. Plaintiffs replead and reallege each and every allegation contained in preceding paragraphs of this Complaint, as if specifically pleaded herein, and if necessary, pleads this cause of action in the alternative.

84. Under California law, an Internet domain name is "property" that can form the basis of a claim for conversion. *Welco Electronics, Inc. v. Mora*, 223 Cal. App. 4th 202, 211 (2014) (citing *Kremen v. Cohen*, 325 F.3d 1035, 1050 (9th Cir. 2003)).

85. Defendants have unlawfully taken control of the three domain names at issue in the lawsuit and are wrongfully exercising control and authority over the domain names.

86. The control and authority exercised by Defendants deprives Plaintiffs of control of, and the income and business generated from, the domain names.

87. Defendants have wrongfully exerted dominion over the Plaintiffs' property in denial of their rights.

88. As a direct and proximate result of Defendants' tortious conduct, Plaintiffs have suffered damages, including but not limited to lost investment, income, profits, and business opportunities, in an amount to be proved at trial.

89. Plaintiffs request judgment against Defendants for conversion, and for all damages in an amount to be proved at trial, interest, costs, and attorneys' fees, and all other relief deemed appropriate by the Court.

## SUMMARY

90. In essence, Defendants' have abused their position as hired webmaster and Internet expert to steal Plaintiffs' 20-year business away from them through Defendants' massive copyright piracy, fraud, cybersquatting, and numerous acts of unfair competition. Defendants' willful and brazen theft of Plaintiffs' intellectual property, domain names, and customer reviews, essentially usurping Plaintiffs' entire business away from them, necessitated the bringing of this action to restore Plaintiffs' rights and property.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray for the following relief:

(1) That judgment be entered against Defendants TERESA MURPHY and CAGETOPIA LLC in favor of Plaintiffs for such damages as Plaintiffs have sustained in consequence of Defendants' infringement of said copyrights but in no case less than $4,500,000.

(2) That an order be entered compelling Defendants TERESA MURPHY and CAGETOPIA LLC to account for all gains, profits, and advantages derived by each Defendant by its infringement of Plaintiffs' copyrights or such damages as the court shall deem proper within the provisions of the copyright statutes.

(3) That an order to be entered against Defendants for statutory damages for each of the 30 Copyrighted Works owned by Plaintiffs and infringed by Defendants.

(4) That an order be entered pursuant to 17 U.S.C.A. § 504 awarding enhanced statutory damages for each infringement of Plaintiffs' 30 Copyrighted Works alleged herein.

(5) That an order be entered compelling Defendants TERESA MURPHY and CAGETOPIA LLC to immediately turn over to Plaintiffs all data regarding customer order histories and customer reviews for cage kit orders that were obtained prior to 1 May 2023 and then delete that data from their systems, computers, email accounts, and destroy any hard copies of such data in their possession or that of their affiliates and be enjoined from any further use of the stolen data.

(6) That an order be entered compelling Defendants TERESA MURPHY and CAGETOPIA LLC to immediately transfer access to and lawful ownership of the domain name < CCCages.com > to Plaintiffs.

(7) That an order be entered compelling Defendants TERESA MURPHY and CAGETOPIA LLC to immediately transfer access to and lawful ownership of the Internet domain names < GuineaPigCagesStore.com > and < GuineaPigCageStore.com > to Plaintiffs.

(8) That a judgment be entered against Defendants TERESA MURPHY and CAGETOPIA LLC in favor of Plaintiffs for $100,000 for each Internet domain name wrongfully misappropriated or used.

(9) That a judgment be entered against Defendants TERESA MURPHY and CAGETOPIA LLC in favor of Plaintiffs to make full restitution for all money wrongfully obtained from Defendants' unlawful, unfair, and fraudulent business practices described herein.

(10)    That a judgment be entered against Defendants TERESA MURPHY and CAGETOPIA LLC in favor of Plaintiffs to compensate Plaintiffs for all money lost as a result of Defendants' unlawful acts described herein.

(11)    That a judgment be entered against Defendants TERESA MURPHY and CAGETOPIA LLC in favor of Plaintiffs for Plaintiffs' attorneys' fees and costs, treble actual damages, and treble damages based on an accounting of Defendants' profits, including all statutory enhancements, other enhancements on account of the willful nature of the Defendants' acts as provided in 15 U.S.C. § 1117 and pursuant to 17 U.S.C. § 505.

(12)    That an order be entered compelling Defendants TERESA MURPHY and CAGETOPIA LLC to permanently remove from the Internet including all websites and social media platforms that they own, operate, or are otherwise affiliated with all materials that infringe Plaintiffs' copyrights.

(13)    That an order be entered compelling Defendants TERESA MURPHY and CAGETOPIA LLC to undertake corrective advertising in a form, manner, and frequency that is acceptable to Plaintiffs and the court.

(14)    That judgment be entered against Defendants TERESA MURPHY and CAGETOPIA LLC in favor of Plaintiffs for punitive damages as a result of Defendants having acted with oppression, fraud, or malice.

(15)    That judgment be entered against Defendants TERESA MURPHY and CAGETOPIA LLC in favor of Plaintiffs for such damages, costs, and expenses as Plaintiffs have incurred in regard to this lawsuit.

(16)    That Plaintiffs have such other and further relief, in law or equity, to which Plaintiffs may be entitled, or which this court may deem just or proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury as to all matters so triable.

Dated:   <u>17 November 2023</u>                              By: <u>/s/  Robin Gross</u>
                                                                              ROBIN GROSS

                                                                              Law Office of Robin Gross
                                                                              1388 Haight Street, Suite #130
                                                                              San Francisco, CA  94117
                                                                              *Robin@ImagineLaw.com*
                                                                              (415) 857-0231

                                                                              Attorney for Plaintiffs

**INDIVIDUAL VERIFICATION**

1.  I am the Plaintiff in the action herein.

2.  I swear under penalties of perjury of the laws of the United States of America that I have read the annexed Complaint and know of the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.


<u>          /s/ Susan Galanto          </u>                    <u>     11/15/2023          </u>
         Susan Galanto, Plaintiff                                   Dated

# <u>Table of Contents</u>
## for EXHIBITS
## to Verified Complaint (1st Amended)

**Exhibit A – Plaintiffs' 30 Copyrighted Works Infringed by Defendants**

**Summary Table of Defendants' Infringement of Plaintiffs' Copyrighted Works**

Attachment 1 – Copyrighted Work #1
Attachment 1a – Copy of Copyrighted Work #1
Attachment 1b – Defendants' Infringement of Copyrighted Work #1

Attachment 2 – Copyrighted Work #2
Attachment 2a – Copy of Copyrighted Work #2
Attachment 2b – Defendants' Infringement of Copyrighted Work #2

Attachment 3 – Copyrighted Work #3
Attachment 3a – Copy of Copyrighted Work #3
Attachment 3b – Defendants' Infringement of Copyrighted Work #3

Attachment 4 – Copyrighted Work #4
Attachment 4a – Copy of Copyrighted Work #4
Attachment 4b – Defendants' Infringement of Copyrighted Work #4

Attachment 5 – Copyrighted Work #5
Attachment 5a – Copy of Copyrighted Work #5
Attachment 5b – Defendants' Infringement of Copyrighted Work #5

Attachment 6 – Copyrighted Work #6
Attachment 6a – Copy of Copyrighted Work #6
Attachment 6b – Defendants' Infringement of Copyrighted Work #6

Attachment 7 – Copyrighted Work #7
Attachment 7a – Copy of Copyrighted Work #7
Attachment 7b – Defendants' Infringement of Copyrighted Work #7

Attachment 8 – Copyrighted Work #8
Attachment 8a – Copy of Copyrighted Work #8
Attachment 8b – Defendants' Infringement of Copyrighted Work #8

Attachment 9 – Copyrighted Work #9
Attachment 9a – Copy of Copyrighted Work #9
Attachment 9b – Defendants' Infringement of Copyrighted Work #9

Attachment 10 – Copyrighted Work #10
Attachment 10 – Copy of Copyrighted Work #10

Attachment 10b – Defendants' Infringement of Copyrighted Work #10

Attachment 11 – Copyrighted Work #11
Attachment 11a – Copy of Copyrighted Work #11
Attachment 11b – Defendants' Infringement of Copyrighted Work #11

Attachment 12 – Copyrighted Work #12
Attachment 12a – Copy of Copyrighted Work #12
Attachment 12b – Defendants' Infringement of Copyrighted Work #12

Attachment 13 – Copyrighted Work #13
Attachment 13a – Copy of Copyrighted Work #13
Attachment 13b – Defendants' Infringement of Copyrighted Work #13

Attachment 14 – Copyrighted Work #14
Attachment 14a – Copy of Copyrighted Work #14
Attachment 14b – Defendants' Infringement of Copyrighted Work #14

Attachment 15 – Copyrighted Work #15
Attachment 15a – Copy of Copyrighted Work #15
Attachment 15b – Defendants' Infringement of Copyrighted Work #15

Attachment 16 – Copyrighted Work #16
Attachment 16a – Copy of Copyrighted Work #16
Attachment 16b – Defendants' Infringement of Copyrighted Work #16

Attachment 17 – Copyrighted Work #17
Attachment 17a – Copy of Copyrighted Work #17
Attachment 17b – Defendants' Infringement of Copyrighted Work #17

Attachment 18 – Copyrighted Work #18
Attachment 18a – Copy of Copyrighted Work #18
Attachment 18b – Defendants' Infringement of Copyrighted Work #18

Attachment 19 – Copyrighted Work #19
Attachment 19a – Copy of Copyrighted Work #19
Attachment 19b – Defendants' Infringement of Copyrighted Work #19

Attachment 20 – Copyrighted Work #20
Attachment 20a – Copy of Copyrighted Work #20
Attachment 20b – Defendants' Infringement of Copyrighted Work #20

Attachment 21 – Copyrighted Work #21
Attachment 21a – Copy of Copyrighted Work #21
Attachment 21b – Defendants' Infringement of Copyrighted Work #21

Attachment 22 – Copyrighted Work #22
Attachment 22a – Copy of Copyrighted Work #22
Attachment 22b – Defendants' Infringement of Copyrighted Work #22

Attachment 23 – Copyrighted Work #23
Attachment 23a – Copy of Copyrighted Work #23
Attachment 23b – Defendants' Infringement of Copyrighted Work #23

Attachment 24 – Copyrighted Work #24
Attachment 24a – Copy of Copyrighted Work #24
Attachment 24b – Defendants' Infringement of Copyrighted Work #24

Attachment 25 – Copyrighted Work #25
Attachment 25a – Copy of Copyrighted Work #25
Attachment 25b – Defendants' Infringement of Copyrighted Work #25

Attachment 26 – Copyrighted Work #26
Attachment 26a – Copy of Copyrighted Work #26
Attachment 26b – Defendants' Infringement of Copyrighted Work #26

Attachment 27 – Copyrighted Work #27
Attachment 27a – Copy of Copyrighted Work #27
Attachment 27b – Defendants' Infringement of Copyrighted Work #27

Attachment 28 – Copyrighted Work #28
Attachment 28a – Copy of Copyrighted Work #28
Attachment 28b – Defendants' Infringement of Copyrighted Work #28

Attachment 29 – Copyrighted Work #29
Attachment 29a – Copy of Copyrighted Work #29
Attachment 29b – Defendants' Infringement of Copyrighted Work #29

Attachment 30 – Copyrighted Work #30
Attachment 30a – Copy of Copyrighted Work #30
Attachment 30b – Defendants' Infringement of Copyrighted Work #30

**Exhibit B – Email exchange from 15 June 2003 through 9 July 2003 between the Parties**

**Exhibit C – Email message of 15 December 2022 from Teresa Murphy to Susan Galanto**

**Exhibit D – Email message of 6 January 2023 from Teresa Murphy to Susan Galanto**

**Exhibit E – Message from Plaintiffs' Vendor in China to Plaintiffs in March 2023**

**Exhibit F – Email messages from GPCS Customer to Plaintiffs on 20 and 23 Oct. 2023**